UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED NATIONAL INSURANCE COMPANY, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-07-556 |
| | § | |
| EOG RESOURCES, INC., | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM ORDER AND OPINION**

Pending before the court is the motion to transfer venue to the United States District Court for the District of Utah, pursuant to 28 U.S.C. § 1404(a), of the defendant EOG Resources, Inc. (Dkt. 15). After considering the parties' arguments, the totality of the circumstances, and the applicable law, the court is of the opinion that the motion should be DENIED.

**I. BACKGROUND**

In February 2007, plaintiff United National Insurance Company ("United National"), as subrogee of G&H Consulting ("G&H"), sued defendant EOG Resources, Inc. ("EOG"), in the Southern District of Texas asserting diversity jurisdiction. (Dkt. 1 at 1-2). EOG answered in mid-March. (Dkt. 5). On April 4, 2007, United National obtained leave from the court and filed its first amended complaint. (Dkt. 9). In that complaint United National alleged breach of contract as its sole cause of action. It asserted that EOG breached its Master Service Contract[1] with G&H by

---

[1] EOG's Master Service Contract with G&H allows G&H to be added to EOG's approved list of contractors and sets out the terms and conditions relevant to any drilling, workover, and completion consulting work G&H performs for EOG. (*See* Dkt. 15, Ex. A).

failing to indemnify G&H for the money paid to settle a lawsuit allegedly covered by the contract.[2] (Dkt. 9 at 6-7). United National requested a jury trial. (Dkt. 9 at 7).

EOG answered the amended complaint and denied it was required to indemnify G&H. (Dkt. 11). EOG based its response on: (1) the Master Service Contract with G&H; and (2) G&H's insurance policy with United National listing EOG as an additional insured. (*Id.* at 4-7). EOG also asserted several counterclaims against United National. (*Id.* at 8). First, EOG alleged breach of contract because United National failed to defend EOG in the underlying lawsuit. (*Id.* at 15). Second, EOG claimed that United National violated sections 541.151 and 542.051-.061 of the Texas Insurance Code by: (1) "failing to pay EOG's reasonable costs of defense even after liability under the [policy] had become clear;" and (2) failing to make prompt payment of EOG's defense costs. (*Id.* at 15-16). EOG asserted claims for statutory and treble damages as provided in the code. Third, EOG alleged that United National owes EOG indemnity for G&H's alleged breach of warranty and for United National's claims in the current case. (*Id.* at 16-17). And last, EOG moved the court to "declare its rights and the duties of United National pursuant to the Federal Declaratory Judgment Act and Chapter 37 of the Texas Civil Practice & Remedies Code." (*Id.* at 17).

In its answer to EOG's counter-claims, United National asserted a number of affirmative defenses. (Dkt. 8). United National countered that EOG's claims under the Texas Insurance Code are barred by the statute of limitations. Alternatively, United National argued that the Texas code does not apply because the policy was issued to a named insured in Utah and the underlying lawsuit arose out of an incident occurring in Utah. (*Id.* at 4). United National further asserted that EOG's

---

[2] *Cannon v. EOG Resources, Inc.*, No. C-03-cv-760 (D. Utah dismissed Apr. 20, 2005). In August 2002 there was an explosion on a workover rig operated by EOG in Utah. That explosion killed Mr. Donald Cannon. Mr. Cannon's estate and family brought suit against, among others, G&H. G&H paid Cannon a total settlement of $590,000.

2

claims for indemnity are void under the Texas Oilfield Anti-Indemnification Act.[3] (*Id.*)

EOG has now moved the court to transfer the case to Utah. (Dkt. 15). United National responded to EOG's motion, EOG replied, and United National then filed a sur-reply. (Dkt. 18-20).

## II. ANALYSIS

EOG seeks to transfer venue to the District of Utah pursuant to 28 U.S.C. § 1404(a) so that Cannon Well Services, a company EOG asserts is not subject to jurisdiction in Texas, may be added as a party to the suit.

**1.    Standard of Review**

Section 1404(a) states that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district where it might have been brought." 28 U.S.C. § 1404(a). The burden is on the movant to show that "the considerations of convenience and justice weigh heavily in favor of a transfer." *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966). Whether the relevant factors weigh in favor of transfer is left to the discretion of the trial court. *See In re Volkswagon AG*, 371 F.3d 201, 203 (5th Cir. 2004).

The court must engage in a two step inquiry when determining whether to transfer a case. First, it must determine if the judicial district sought by the movant is one in which the case could have originally been brought. *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003). Second, the court must determine whether the convenience of the parties and witnesses, and the interest of justice, require that the case be tried elsewhere. *Id.*

For the first step, the court looks to 28 U.S.C. § 1391 to determine whether the claim could

---

[3]    Tex. Civ. Prac. & Rem. Code § 127.001-.007 disallows indemnity agreements pertaining to a well for oil, gas, or water as against public policy except in certain situations, such as where the parties agree in writing that the indemnity obligation will be covered by insurance obtained by the indemnitor.

have initially been brought in the district sought by the movant. When all defendants reside in the same state, section 1391(a) allows a plaintiff to bring a diversity claim in the judicial district where any defendant resides. 28 U.S.C. § 1391(a). A corporate defendant is "deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Where the only defendant is a corporation, the court need only look at whether that corporation was subject to personal jurisdiction in the judicial district sought by the movant.

The second step requires a lengthier analysis and usually becomes the critical inquiry in a motion to transfer. This step includes two sets of factors the court must consider: private and public interest factors. *In re Volkswagen AG*, 371 F.3d at 203. None of the factors is given dispositive weight. *Id.* The private interest factors consist of:

> 1) the relative ease of access to sources of proof;
> 2) the availability of compulsory process to secure the attendance of witnesses;
> 3) the cost of attendance for willing witnesses;
> 4) all other practical problems that make trial of a case easy, expeditious and inexpensive; and,
> 5) the plaintiff's choice of forum.

*Id.*; *In re Horseshoe Entm't*, 337 F.3d at 434. The public interest factors consist of:

> 1) the administrative difficulties flowing from court congestion;
> 2) the local interest in having localized interests decided at home;
> 3) the familiarity of the forum with the law that will govern the case;
> 4) the avoidance of unnecessary problems of conflict of laws; and,
> 5) the unfairness of burdening citizens in an unrelated forum with jury duty.

*In re Volkswagen AG*, 371 F.3d at 203; *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981). The weight of each factor greatly depends on the facts of the case.

**2.   Summary of EOG's Argument for Transfer.**

EOG urges the court to transfer this case to a forum where all parties may be joined. (Dkt. 15 at 10). The underlying lawsuit arose in Utah, and EOG asserts it "has a claim for indemnity

4

against [Cannon Well,] a third party who is not amenable to service of process in the jurisdiction in which the lawsuit was brought." (*Id.*) According to EOG's motion, Cannon Well was a Wyoming corporation with its principle place of business in Utah that did no business in Texas. (Dkt. 15 at 8). EOG urges the court to follow *Fletcher v. Exxon Shipping Co.*, in which the Eastern District of Texas allowed transfer where there was a potential claim against a third party over whom the Texas court did not have jurisdiction. *Fletcher v. Exxon Shipping Co.*, 727 F. Supp. 1086 (E.D. Tex. 1989). In *Fletcher*, "the indemnity claim present[ed] one of the strongest reasons for transfer," and "the interest of justice mandate[d] that the court try to prevent repetitive litigation." *Id.* at 1087. EOG concludes that by transferring the case to Utah, where all three parties may be joined, the court will avoid duplicitous litigation, inconsistent results, and waste of important judicial resources. (Dkt. 15 at 4-5).

**3.     Summary of United National's Argument Against Transfer.**

United National, as plaintiff, asks the court to preserve its choice of forum and deny EOG's motion to transfer because the "plaintiff's privilege to choose, or not to be ousted from, his chosen forum is highly esteemed." *Rodriquez v. Pan Am. Life Ins. Co.*, 311 F.2d 429, 434 (5th Cir. 1962). United National argues that "EOG cannot show that it could successfully bring suit against Cannon [Well] even if the case is transferred, and EOG can bring a separate action against Cannon [Well] in Utah to attempt to prosecute its claims against the company, [therefore] United National's choice of forum should not be disturbed." (Dkt. 20 at 2).

**4.     Application of the Law and the Facts.**

The first step is to analyze whether this case could have originally been brought in the District of Utah. *See In re Horseshoe Entm't*, 337 F.3d at 433. Looking to section 1391(a), in a case

where jurisdiction is based solely on diversity and all defendants reside in the same state, as here, jurisdiction is proper in a judicial district where the defendant resides. 28 U.S.C. § 1391(a)(1). A diversity action may also be brought in a judicial district where a substantial part of the acts giving rise to the claim occurred. 28 U.S.C. § 1391(a)(2). Two questions arise here. First, does EOG reside in Utah? Second, did a substantial part of the acts giving rise to the claim occur in Utah? Satisfaction of either would allow for the action to have been brought in Utah.

Regarding the first inquiry, section 1391(c) states that where the defendant is a corporation, it resides in any judicial district that would have jurisdiction over it when the action was commenced. 28 U.S.C. § 1391(c). EOG, a corporation, was operating a natural gas rig in Utah in August, 2002. (Dkt. 15 at 3). EOG contends it was and is still amenable to service in Utah, which has gone unrebutted by United National. (*Id.* at 12). Furthermore, EOG's motion makes reference to a workover rig for a natural gas well in Vernal, Utah, which EOG currently operates. (*Id.* at 3). Such contacts would be sufficient for a Utah court to exercise jurisdiction over EOG.

Though the first question has been answered in the affirmative, the court will briefly discuss whether a substantial part of the acts giving rise to the claim occur in Utah. EOG's natural gas rig located in Utah exploded, killing Mr. Cannon. (*Id.*) His survivors brought an action against multiple parties, including G&H. (*Id.*) Because United National as subrogee of G&H seeks indemnity from EOG based on the explosion in Utah, the second question may also be answered in the affirmative. (Dkt. 9 at 7).

Having successfully navigated past the first step, the inquiry moves to the second. While both parties have recognized that the private and public interest factors must be weighed by the court, neither has actually addressed all of the factors. Instead, each party has relied on a single factor.

Such reliance is misplaced, however, because no single factor is given dispositive weight. *In re Volkswagen AG*, 371 F.3d at 203. The court considers each factor in the analysis prior to making its determination.

>               *i. Relative Ease of Access to Sources of Proof.*

United National's sole claim is that EOG breached its contract with G&H by failing to indemnify G&H for the money it paid in the underlying suit. (Dkt. 9 at 6-7). The contract being the source of proof here, obtaining access to that contract should prove no harder in Texas than in Utah.

EOG's answer, however, asserts that Cannon's death was caused by the negligence of G&H and third parties. (Dkt. 11 at 6). EOG failed to discuss this defense in its motion to transfer, requiring the court to speculate whether the defense will be asserted at trial and its validity. Assuming EOG were to assert the defense at trial, the trial court and parties would require evidence and witnesses from the site of the explosion: Vernal, Utah. (Dkt. 15 at 3). The need for such evidence and witnesses would likely weigh in favor of transfer. However, this factor has not been addressed by EOG. Therefore, without evidence, the court finds that this factor is neutral.

>               *ii. Availability and Cost of Witnesses.*

The factors regarding witnesses, which have been combined here, are often considered the most important in determining whether to transfer a case. *Gundle Lining Const. Corp. v. Fireman's Fund Ins. Co.*, 844 F.Supp. 1163, 1166 (S.D. Tex. 1994). Here, however, neither party has mentioned any witnesses, key or otherwise, whose testimony will be required. "[M]ovants for transfer must specifically identify key witnesses and outline the substance of their testimony." *Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 825 (S.D. Tex. 1993). With no witnesses identified, the court finds that this factor is neutral.

*iii. All Other Practical Problems (Catch-all).*

This factor is where EOG's arguments fit into the required analysis. EOG requests transfer so that it might bring a third party action against Cannon Well, a corporation it asserts is not subject to jurisdiction in Texas. (Dkt. 15). Numerous courts have held that transfer for the purpose of consolidating concurrent, ongoing actions is proper where the concurrent actions are based on precisely the same issues. *See Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960); *see also Nature Coast Collections, Inc. v. Consortium Serv. Mgmt. Group, Inc.*, No. C-06-cv-273, 2006 WL 3741930, at *7 (S.D. Tex. Dec. 18, 2006). The court may also consider the convenience of third parties "properly joined in a proceeding." *In re Volkswagen AG*, 371 F.3d at 204.

The instant case is distinguishable, however, because no other case is currently pending on the same issues.[4] EOG has not sued Cannon Well, nor has EOG joined Cannon Well in this proceeding. Moreover, the issues present in this case and the potential indemnity claim against Cannon Well are not so closely related as EOG suggests in its motion. It is true that United National's complaint against EOG is based on EOG's contract with G&H, which is identical to EOG's contract with Cannon Well. However, EOG muddied the waters in answering United National's complaint. EOG asserted multiple affirmative defenses and counter-claims against United National relating to United National's insurance policy with G&H. (Dkt. 11). These

---

[4] The Eastern District of Texas, beginning with *Fletcher v. Exxon Shipping Co.*, has transferred cases where the defendant alleged a possible indemnity claim against a third party who is not amenable to service in the plaintiff's chosen forum. *Fletcher*, 727 F. Supp. at 1087. The *Fletcher* court reasoned that adjudicating the claims together, were the defendant to assert the indemnity claim, "would preserve very valuable judicial resources." *Id.* Very few courts follow *Fletcher*, with the Supreme Court, Fifth Circuit and Southern District of Texas absent among the ranks. Therefore, the court declines to follow *Fletcher*.

assertions have no bearing on the interpretation of the contract nor do they have any direct affect on Cannon Well. In fact, if EOG successfully defends this case, there may be nothing for Cannon Well to indemnify. If EOG loses against United National in a Texas court, a Utah court would likely look to the Texas court's interpretation of the contract because both contracts call for the application of Texas law. This significantly reduces the likelihood that EOG will suffer inconsistent results. Considering the counteracting forces present in this factor, the court finds that it is neutral.

### iv. Plaintiff's Choice of Forum.

The court should consider United National's choice of forum, but that choice in and of itself is not determinative. *In re Horseshoe Entm't*, 337 F.3d at 434. United National is a Pennsylvania corporation with its principle place of business in Pennsylvania. (Dkt. 9 at 1). It has no ties to this forum and predicates venue solely on the residence of EOG. (*Id.* at 2). Therefore, its decision to bring suit in Houston holds little sway and weighs only slightly against transfer.

### v. The Administrative Difficulties Flowing from Court Congestion.

The parties failed to brief the court on this matter, but recent statistics show the Southern District of Texas to be the marginally better venue. The average time between filing and disposition of civil cases in 2006 was 8.6 months in the Southern District of Texas. In Utah, filing to disposition averaged 10.3 months. *See* FED. COURT MGMT. STATISTICS, JUDICIAL CASELOAD PROFILE: DISTRICT COURTS (2006), available at http://www.uscourts.gov/cgi-bin/cmsd2006.pl. This factor weighs slightly against transfer.

### vi. Local Interest in Having Localized Interests Decided at Home.

This suit between corporations from separate states concerns a form contract used by EOG. The event giving rise to the litigation of the contract's indemnity provisions occurred in Utah. (Dkt.

9

9 at 4). Furthermore, the parties contracted for the purpose of doing business in Utah. (Dkt. 9). Finally, though domicile is unbriefed by the parties, the contract lists G&H as having a Utah address, and G&H is, therefore, likely domiciled in Utah. (Dkt. 15, Ex. A at 5). Utah's interests in the current matter stem from these three facts. Arguably, Utah has an interest in the adjudication of contractual disputes arising from parties doing business in Utah where that business caused harm to Utah residents. Utah further has an interest in protecting corporations domiciled there. On the other hand, the interpretation of the contract undoubtedly affects EOG, whose principle place of business is Houston, Texas. (*Id.* at 1). The contract also calls for the application of Texas law, and EOG asserts counterclaims against United National calling for the application of provisions of the Texas Insurance Code. (*Id.* at 5; Dkt. 11 at 15-16). In fact, all of Texas's interests have been created by EOG, the party wishing to transfer the case to Utah.

It is unclear whether Texas's interests trump those of Utah. By failing to discuss Utah's interest, especially whether G&H is a domiciliary of Utah, EOG has again failed to meet its burden on the motion to transfer. The Utah plaintiffs in the underlying suit have been compensated. The question now becomes who must bear the final burden of that compensation, the company headquartered in Texas or the Pennsylvania corporation? Utah is absent from that equation. Accordingly, this factor weighs against transfer.

### vii. *Familiarity of the Forum with the Governing Law.*

The contract here calls for Texas law, and EOG's defenses and counter-claims call for the application of Texas law. EOG's contract with Cannon Well also calls for the application of Texas law. While Texas courts are obviously more familiar with Texas law, the Utah courts would likely have little trouble applying Texas law. The elements for a breach of contract action in Utah are

strikingly similar to the elements in Texas. Both states require a plaintiff to establish that a contract exists, the plaintiff performed, the defendant breached, and the plaintiff was damaged as a result. Compare Pegram v. Honeywell, Inc., 361 F.3d 272, 288 (5th Cir. 2004) (citing *Runge v. Ratheon E-Systems, Inc.*, 57 S.W.3d 562, 565 (Tex. App.—Waco 2001), *with Eleopulos v. McFarland & Hullinger, L.L.C.*, 145 P.3d 1157, 1159 (Utah App. 2006). This factor weighs slightly against transfer.

### *viii. Avoidance of Unnecessary Problems of Conflict of Laws.*

Should a conflict of law issue arise in this matter, it would likely arise in either forum. The events causing the underlying suit arose in Utah, but the contract calls for Texas law. The contract also specifically excludes any conflicts of law rules that would require application of another state's laws. This factor weighs against transfer.

### *ix. Unfairness in Burdening Citizens in an Unrelated Forum with Jury Duty.*

"Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947), *superseded by statute on other grounds*, 28 U.S.C. § 1404(a) (1982), *as recognized in Am. Dredging Co. v. Miller*, 510 U.S. 443, 449 n.2 (1994). Here, United National requested a jury trial, making this factor relevant. Utah residents have little to no relation to the present litigation. The underlying suit largely concerned Utah, but the question now is merely whether the Pennsylvania corporation who paid the settlement must bear the loss, or may it shift the loss to EOG, a corporation domiciled in Houston, Texas. While Utah residents may have an interest in seeing that a Utah corporation, such as G&H, receives the benefit of its bargain through the enforcement of the contract, in reality G&H has little to do with this case. United National is the real party in interest as it paid out the settlement on

behalf of G&H and is now looking to recover that cost. Finally, it may also be argued that Utah residents have an interest in seeing a corporation that contracts to do business in Utah live up to its contractual agreement regardless of who the true beneficiary is.

Texas residents, on the other hand, have an interest in contractual disputes arising from activities conducted by corporations domiciled in Texas. It is not unreasonable to expect a Texas jury to make determinations as to a contract governed by Texas law or regarding defenses and counterclaims asserting Texas law. Arguably, residents of both states have a relation to the litigation. As such, this factor is neutral.

### III. CONCLUSION

In a motion to transfer, the movant bears the burden to show the court that "the considerations of convenience and justice weigh heavily in favor of a transfer." *Time, Inc.*, 366 F.2d at 698. Both parties failed to analyze the private and public interest factors which must be considered by the court. Because the court is bound to follow the factors where they lead, the discussion above considers each factor by looking to the pleadings and motions made by both parties. The majority of the factors, five total, were against transfer, albeit three of them only slightly. Four factors were neutral, tilting the scale neither toward nor away from transfer. No factors favored transfer. Because EOG bears the burden to show that the factors weigh heavily in favor of transfer, the neutral factors weigh against it. In this case, all factors weigh against EOG. After considering the private and public factors, EOG's motion is DENIED.

Signed at Houston, Texas on October 11, 2007.

_____
Gray H. Miller
United States District Judge